All right, the first case we're going to hear this morning is United States v. Burleigh, and Mr. Pender, we'll hear from you first. Thank you, Your Honors, and may it please the Court, Don Pender for the defendant, Larry Burleigh. Your Honors, I would like to start with a quote. The quote comes from a different Fourth Circuit case, United States v. Friend, but I do think it applies here. And that quote is that good process often promotes good outcomes. Now, clearly I'm here on behalf of Mr. Burleigh because we believe that the outcome in this case was a bad one. But more importantly, we believe that the outcome was a bad one because we believe that the process was an abuse of discretion. And so what we are asking this Court to do is to send this case back to the District Court so that it can have an opportunity to perform the proper analysis. If it were to do so today, it would have the benefit of an actual policy statement from the guideline, which I think would clear maybe some of the Court's confusion or maybe clear some of the things the Court seemed to be of the opinion it didn't need to address. It would now know exactly what it needed to address. It would also have the benefit of more robust case law that has happened since McCoy. And looking at the opinion, and I think that's where you have to go, is to the record in order to determine what the District Court did here. It's our opinion that the District Court, while it acknowledged that the defendant argued that there was an issue with respect to the 924C stacking, that is a different question from whether or not the Court considered it. And I think when you look at McCoy in particular, McCoy makes it clear that there are two distinct features when you're looking at a 924C stacking case and assessing extraordinary and compelling circumstances that you ought to look at. That's the unusual length of the sentence, and that's the gross disparity that's created. And so it's not enough to simply acknowledge that the defendant is arguing that his sentence may be longer. And in fact, that is language directly from the opinion that he may have a longer sentence today or that there may be a disparity. There is no may, first and foremost. It's without question. He received a 45 and a half year sentence, 35 years of it is based on a 924C stacking provision. It's no longer valid. He would get 20 years mandatory on that today. So we're talking about a difference of 15 years. We're not talking about a difference of 15 months or three years or even five years. We're talking about a significant difference. We're talking about a difference that is actually the statutory maximum on the carjacking charge that he was charged with. And so for the Court to go through the entire opinion and not at any point acknowledge the sheer and unusual length of the sentence, the gross disparity that is created when those 924C charges are unstacked as they would be today, that is the first place where we would say there is an abuse of the Court's discretion. There's also exceptional rehabilitation in this case to the tune of six letters from BOP officials, many of which say they believe Mr. Burley could be released and would be an asset to society right now today. I would note that that's notable. It's notable for a couple reasons. One, it's notable because, again, these are BOP officials and these are folks that work with Mr. Burley regularly. But also it's exceptional because, again, remember, he was never asking for the Court to, or at least once his formal filings were made, he wasn't asking for the Court to reduce his sentence and release him immediately. What he just asked for was for the Court to reduce it by the 15 years that any defendant today, under these exact same facts, would be subject to. He still would have to do 30 and a half years. And so to the degree that the District Court is concerned with promoting the interests of justice or is concerned with deterrence or is concerned with any of those 3553A factors, we are still talking about a 30-year sentence. And I think that's important because one of the things that the District Court pointed to was the fact that Mr. Burley had only served 27% of his sentence at that time. Now, I would note that even if it went back today and he had only served 27%, that still would be more than 10 years. So that would still fit him under the new 1B1.13. But even besides that, again, he wasn't asking to be released at the point of that 27%. He would have served 30, which would have been over 50%. And so for the Court to not address those things, that is where we believe there was an abuse of discretion in this case. And again, what we're asking this Court to do is to send it back so that the District Court could take another look at it, would have the benefit of the policy statement, would have the benefit of Brown, which came after McCoy. And I think, frankly, even with... What's your response to the Court's application of the 3553 factors? I think that in this case in particular, that is insufficient. And the reason I think it is insufficient... Of course it is. Statute says otherwise. I mean, statute prohibits any change in the sentence unless you have extraordinary and compelling circumstances and 3553 factors justify it. That's right, Your Honor. Let me clarify, because I think I misspoke a little bit when I say that's insufficient. It's not insufficient that he considered 35538. His consideration of it was insufficient, and here's what I mean by that. You can't assess 35538 in this case without acknowledging, for example, the unwarranted sentencing disparity that would occur, again, because of the 15-year difference. He does not address how the exceptional rehabilitation affects the 35538 factors. He does not address the fact, Your Honors, and I think this is one of the biggest things with 35538 in this particular case, is we have to remember, in order to get to this same sentence today, he would have to vary upward 15 years. The court didn't even vary upward at the initial sentencing, and so to simply fall back on what was said in 2011 in order to justify what would now be a 15-year upward variance, that's what I mean when I say his analysis of the 35538 factors was insufficient. There were things that changed that analysis. Of course, we're not talking about a variance, and we're not talking about a variance back then at all. We're talking about a legal sentence at that point in time, and a question now as to whether you can open up that sentence under the statute. Right, and that, again, goes back to our assessment of the extraordinary and compelling circumstances. That and the 3553 factors have to be satisfied. But the 35538 factors in this particular case are really dependent upon the assessment of the extraordinary and compelling circumstances for the reasons I just named. That's also the nature of the crime, the punishment, deterrence, and all the other factors that are in 35538. I mean, this was a pretty serious crime, wasn't it? Very serious. Very serious, and I'm not here to downplay that aspect of it. It's a very serious crime. I would note that they're, again, not downplaying the seriousness. There was no physical injury. And, again, this is a 45-and-a-half-year sentence. I believe that is twice the national average for murder. And so as serious as it is, and, again, I genuinely don't say this to downplay it, but I do think when you're looking at the length of this sentence, you do have to consider that it is 45-and-a-half years in a case in which there's no physical injury, which is twice the national average for a murder. And those are the types of things that this court's looked at in the past when assessing whether or not there is a sheer and unusual length to the sentence. And then, again, and I know I keep coming back to it, but it's why we're here, that unusual length is what creates the gross disparity. We're not arguing that it's retroactive. It's not retroactive. If it were retroactive, it would simply be a question of, is there a 924C stack or is there not one? The 924C stack is only relevant insofar as the court's assessment of whether the sentence is excessive and whether it creates a gross disparity. So I don't think you can jump over that and go straight to 3553A, and particularly where you've only addressed the same 3553A factors that you addressed the first time, and the court at least appeared to be doing that on sort of information that was now, at this point, is 13 years old regarding Mr. Burley. You still have to give some consideration to what has taken place before then. That comes from the Supreme Court and Concepcion, so you still have to do that. And our position is that the district court didn't do that. The district court acknowledged to some degree that there had been some rehabilitation, but really gave no indication of how that rehabilitation affected 3553A or affected the extraordinary and compelling circumstances analysis. In fact, the language regarding that rehabilitation in the extraordinary and compelling circumstances portion of the opinion is just outright wrong. The district court cites a case that says rehabilitation alone is insufficient. Well, the defense was never arguing rehabilitation alone. No one was ever asking the court to consider rehabilitation alone. It was rehabilitation along with the gross disparity, along with the age of the defendant at the time of the conduct. The age of the defendant probably is, of those three, the least strong, but they are all to be considered together, and it also does not appear that the district court did that. One of the most glaring things I see here is that the district court read McCoy, seemed to just kind of pull out the portions of McCoy that spoke to its discretion to make the decision it wanted to make, but ignored the holding in McCoy, ignored the analysis in McCoy, ignored the analysis in all the district court cases that McCoy cited. Even going back to look at McCoy when it was at the district court, the district court judge, I mean, he didn't spend... There's not, you know, a super robust analysis of the gross disparity, but there's enough there for us to know how the district court felt about it. I think the problem here is you could read this entire opinion and not actually know if this judge found that there was an unusual length to this sentence or whether or not he found that there was a gross disparity. And I think that's a problem when you can read the opinion and not know where he comes down on those things. At minimum, we need to know that, because, frankly, it's hard to see how a person, if they've conducted the process correctly, could look at a case like this and come to a conclusion that a 15-year disparity is not dramatic. Now, the court may go do its 3553 analysis, and that will lead to an outcome, and, you know, whatever that outcome may be, if it is sent back, will be addressed or not addressed when that time comes. But I think, first things first, the court's got to get the analysis right so that if this court is, in fact, reviewing it, you know where he stands on it. Is that it? That is, Your Honor. All right, thank you, Mr. Perry. Thank you. All right, Mr. Kapoor. Good morning, Your Honors, and may it please the court. Vitan Kapoor on behalf of the United States. The district court did not abuse its discretion by denying Mr. Burley's motion for a sentence reduction. The district court did not act irrationally. It followed the statutory parameters, and it conducted the necessary analysis. Ultimately, Mr. Burley disagrees with how the court weighed the brutal nature of his crime, his history, against the rehabilitation evidence that he presented. But that disagreement is insufficient to reverse the district court's decision. It may be true that different judges, different courts, maybe even this court, would consider reaching a different conclusion under the same set of facts. But that's not the standard. The standard is in whether, arriving at this decision, the district court abused its discretion. It did not. I'd like to start with the McCoy and the stacking argument. Mr. Burley's argument relies on a fundamentally flawed premise, that it was only due to the then-existing mandatory minimum that Mr. Burley received a 545-month sentence. In fact, the district court's opinion makes clear that the basis for the sentence was the brutal nature of the crime, the lifelong impact on the victim, on the victim's wife, his criminal history, and the fact that he was on probation at the time when he committed the crime, that were the bases for the judge's sentence. In fact, at the original sentencing hearing, the district court said that it very nearly varied upward and considered sentencing the defendant to life for the misery that he inflicted upon the victim. I understand the point of comparing statistics to national averages for murder and national averages for other crimes, but the facts of this case show exactly why district judges need to retain some discretion to consider the facts of the case, the victim impact, and come up with a sentence that's appropriate to what happened in the crime and the circumstances of the case. During the sentencing hearing, and the reason why the 2010 sentencing hearing is important, is because the victim testified, his wife testified, and this is the same judge who is considering the compassion release motion. The victim's wife said that he's not the same man she married. He's scared, irritable, jumpy. His happiness has been replaced by a vacant stare. He can't watch TV anymore. He can't go outside anymore. So yes, there might not have been physical violence, but when you shove a shotgun down a man's throat, when you threaten his family's life, when you threaten his wife's life, you threaten his life, you're driving around all night robbing banks. He doesn't know if he's going to live through the tale. The government would argue, Your Honor, that that is a significant crime that the district court probably remembered. You know, when this came back up, the district court probably remembered being in that room listening to the testimony of the man who was robbed, the testimony of his wife, and appropriately considered that. But in any event, the district court expressly acknowledged that it had the discretion under McCoy to find that the amendments to the First Step Act could create an extraordinary and compelling reason for release. But the district court cited the panoply of considerations, including the egregious nature of the crime, the victim impact, the defendant's criminal history, as its basis for concluding that in this case it would decline to exercise its discretion to find that the stacked sentences were an extraordinary and compelling reason for release. In other words, from both the sentencing over a decade ago and from the record as described in the district court's opinion, we know why the district court believed that the stacked sentences were not extraordinary and compelling in this case. I just want to also touch on the fact that if you were to accept Mr. Burley's argument here, functionally what we're saying is that there are some cases where a district court cannot exercise its discretion in finding that there are, notwithstanding a stacked sentence, there are reasons why the stacked sentence shouldn't be an extraordinary and compelling reason for release. The government would argue this is precisely the type of case for which the discretion that McCoy offers matters. I'll just turn to the failure to address the sheer and unusual length of the sentence. This court in Moody, which is a case that was decided last year, said that a sentencing disparity alone can't dictate a court's analysis. Rather, the court must make an individualized assessment of the defendant's sentence and give full consideration to the defendant's individual circumstances. That's precisely what the district court did here. You haven't said he had nothing you mentioned at all is really referencing concerning at all. You just had one side of the equation. I understand why you did. You're right. It's a serious case, and I don't understand Mr. Pender saying that it wasn't. You recited all those things that were how the crime is, but McCoy requires a balance of consideration. The brutality of the crime, you're right, will never change, but human beings do. Yes, Your Honor. That's what McCoy says, you have to balance that. The question is, Mr. Pender started off, he didn't say, well, you can't do that, you don't have discretion to do that, you can't end up, but you do have to do the balancing that's required. There are some extraordinary things here. When prison officials write letters like that for people who've been in prison for a long time, that's pretty extraordinary. You have to at least say, how do you balance that? What balance is a bushel of wheat against a heart full of sorrows? There must be some balance. That's what he's saying. He didn't say you couldn't do it, you didn't have discretion, and I know you did, you made a good argument in terms of what happened at sentencing, but things happen afterwards. Like the sentencing commission, they looked at the unfair stacking. It was there for that. All cases, not just this case, but all of those, and some of them are serious. Tell me, where is the evidence that he balanced the other side of it? You gave the equation very well, and nobody's arguing with it. What about the letters in consideration? What did the court say about those letters? Yes, Your Honor. I think a fair reading of the district court's memorandum . . . About the letters, that's my specific question right now, about the letters from BOP. I don't believe that the district court specifically mentioned the letters in the memorandum order, but it did specifically and in detail consider the categories of rehabilitation evidence that Mr. Burley provided. For example, he noted the involvement that Mr. Burley has had with the church, his completion of multiple drug courses, that's at JA 196. He noted that the staff members at Florence have attested that Mr. Burley is, quote, a hard worker, dependable, and can now do well in society. He also formally wrote the victim an apology, and that's at JA 197. The district court did go through the specific evidence, but came to this conclusion that while the court commends him for his good behavior, the rehabilitation ultimately, quote, does not outweigh the factors discussed above. At least with respect to 3553A analysis, what the district court is saying is I've looked at these specific pieces of information, what the staff members attested to about his positive steps, his going to church, his going to the drug abuse programs, that he wrote the victim an apology letter. But in the district court's mind, it weighed that against the heinous nature of the offense, the criminal history, and in the district court's mind, the rehabilitation evidence simply didn't outweigh those factors. The government would argue that that's precisely the kind of balancing that a district court has the discretion to engage in, even if similarly situated judges would come to a different conclusion. I'd also note that this is . . . Then McCoy would mean nothing, really, then. You're saying that no matter what he did, he could have saved five people's lives in prison, discovered a cure to cancer. Whatever he did, as long as the district court said this crime was horrible, that's enough for me. That's enough, right? Would it not be? No, Your Honor, that's not . . . What would temper the discretion of the courts just to say, no, I saw the crime, I know what your history was, I know what you did, I know what the impact was. None of that will balance it. What would be the jurisprudential restraint at all, in terms of carrying out McCoy, if that's the metric? Just to say, just to identify, yes, you did do this thing. I recognize that it's in your record, but not really doing it in weighing and balancing. For example, isn't future dangerousness an issue, in terms of 3553A? Yes, Your Honor. Wouldn't it calculate that people are saying these things about someone who's in prison for that long and having a record like that and being commended, have some positive aspect? Is anything in the record that that argued in his behalf? Your Honor, our read of the court's opinion is that at JA 196 to 197, the district court does address Mr. Burley's conduct while in prison, the fact that staff members at the prison have thought positively about him. The case law is clear that the district court's not required, in its opinion, to articulate every single point by point. We would say that if you look at the discussion of the rehabilitation evidence. That's not discussion. That's just listing things. A list, enumeration, does not equate with discussion and consideration. It doesn't equate necessarily to, okay, that's all in there. Doesn't it take more than that, some sense than that? Is there any discussion that that impacted his life? Let me ask you this question. Do you think behavior in prison and those things like that impact positively the question of whether or not you're a future dangerous? No matter what you've done in the past, does that speak positive about the reduction in your dangerousness in the future? Does it? Yes, Your Honor. Did you see the court noted that at all, give any kind of consideration positive for that at all? I didn't, but maybe you did. Where? Again, Your Honor, I think the record would give the government comfort that the court considered it, whether the court expressly said, and addressing future. You're selling the court short. The court spent an entire paragraph discussing his rehabilitation, encouraged him on it. It acknowledged the letters of the prison. It acknowledged that he's turned his life around and all that. It said that's not enough alone. It went through every one of the factors that he raised, age, stacking, and rehabilitation, and devoted an entire discussion in each one, and then said the 553 factors outweigh that and pointed to the fact that the victim was permanently injured for the rest of his life and this type of thing. I don't understand why you won't back the judge up on that, because he even mentioned the letters. He also mentioned the fact that the man applied to the warden to ask for discretion, and the warden turned him down. So there was a lot of balancing. It was a very thorough discussion that the court gave in connection with his sentencing. Yes, Your Honor, the government agrees. We don't normally see it this complete. To be clear, the government is standing behind the district court's memorandum order. I just wonder if I may, Judge Gregory, address your question about the parameters around abusive discretion. I think contrasting this case to Malone presents a really good opportunity to describe what an abusive discretion is. In Malone, the defendant was 68 years old when he filed his compassionate release motion, had had multiple surgeries relating to colon cancer, was, in fact, on home release, ordered by the BOP at the time, and it was in that context the district court abused his discretion by finding that the defendant's advanced age and medical circumstances were not an extraordinary and compelling reason. Again, we're not saying that any particular types of rehabilitation evidence could not weigh favorably in favor of a sentence reduction. It's just when you look at this record, you can see the judge has considered the rehabilitation evidence presented, weighed that against the seriousness of the crime and the defendant's criminal history, and exercised his discretion saying, I don't think a sentence reduction is warranted at this time. One other thing that we'd point out is that the district court noted that at the time of his motion, Mr. Burley had served 27% of his sentence. The reason why that matters, and this court in Kibble said that the courts can consider the amount of time served, is because things like rehabilitation over time can present stronger and stronger evidence of things like a reduced risk of dangerousness. We would argue that that shows another way in which the district court was in fact considering the positives against the negatives and saying, look, you've served a quarter of your sentence at this point, but there's this positive rehabilitation evidence. Based on all that right now, these factors don't outweigh the dangerousness as reflected by the seriousness of the offense and the criminal history of the defendant. What about the discrepancy in terms of the sentencing? Now that stacking was done, and the court did utilize stacking to get to that because it had no choice at that time, right? The stacking increased the sentence, and that stacking would not be in place today, correct? Well, Your Honor, the court would have had a choice. The court could have varied upward. And again, the sentence that was imposed in 2011 was done in the context of what the sentencing guidelines were there. Like I said, it did use stacking, did it not? Yes, Your Honor. Yes, it did. But it did also make clear that it very nearly upward varied in sentence the defendant to life. And we would just point out again, if we were under the guidelines and the parameters as they exist today, the government's charging decisions, the government's plea negotiation decisions, and the court's sentencing decisions would all be taken in light of the guidelines that existed today. So I think, again, you can look at what the district court actually said in the sentencing in 2011, and it's clear that this sentence wasn't, the 545-month sentence wasn't a but-for kind of sentence. In other words, but for the mandatory minimums, the court would have been imposing a much lower sentence. Rather, the court was considering imposing a much higher sentence, but then ultimately decided, viewing the totality of the circumstances, that 545 months was appropriate. So it's in that context that we're saying this case is a little bit different from McCoy or Brown because the difference in the mandatory minimums is not playing as significant a role in the actual determination that the sentencing judge is making. I'd just like to address a couple more arguments that Mr. Burley makes. One, he argues that in the extraordinary and compelling analysis, the district court erred by considering 3553A factors. We'd urge the court to make clear that even in McCoy and since, this court has made clear that that's exactly what a district court is supposed to do. When you're explaining why a non-retroactive change in mandatory minimums doesn't create an extraordinary and compelling reason for a sentence reduction, you have to necessarily refer to the reasons why it's not an extraordinary and compelling circumstance, and those reasons include the nature of the offense, the criminal history, and those are sorts of things that the district courts in McCoy expressly relied on. So if the court has no more questions, we'd ask that you refer. All right. Thank you, Mr. Kapoor. Mr. Pender? I'll just touch a couple things. I do want to make clear that it's not our argument today, nor was it then, that the conduct here wasn't serious, and I think that there's not any getting around that, and I want that to be clear on the record. The conduct here was extremely serious, and I'm not saying it wasn't. My only point is that that exact same conduct today, as he pled guilty to it, the mandatory minimum would be 15 years less than it is. So that exact same conduct today, a defendant that came before the court, his guideline would be two 10-year, 924Cs, and then I believe it was 90 to 125 months on the carjacking. That I don't quite understand the courts, and even to some degree, and this is not a personal thing, even to some degree the governments, I don't quite understand this sort of dancing around that. I mean, that part is not- There are a lot of people serving sentences under different types of arrangements that Congress makes, and the changes sometimes are made retroactive and sometimes not. But we're talking about compassionate release, and compassionate release has to take into account all these factors, including the 3553 factors. The court spent a lot of time on both the positive and the negative. I don't understand why the court didn't give everything full consideration. The only question is, would we have decided it differently? That's not the test. The test is whether the court abused its discretion, and the court explained what it was doing. It addressed first, it addressed the stacking, recognized it. Well, it stacked again. I mean, even under the current, there's stacking. Stacking is the wrong term. It reduced the reduced sentence for the stacking of the two violations. So the court acknowledged that. The court acknowledged his age and addressed that. The court acknowledged his- These are separate discussions. Acknowledged his restoration in prison, his good works, and procedurally went all through that. But then the court says under the 3553 factors, they're not outweighed. I don't know what else we ask the court to do except to disagree, and I'm not sure we're free to, are we? Your Honor, I think, to your point, and I think where I may differ on that is, there's no disputing that the court, the district court, said the words that it needed to say. It said- What else is it going to do, say the words? It said all the words. It not only acknowledged these things, it commended this man. It said, we expect this, we hope we're doing it. It commended him and encouraged him. It talked about the letters, but it also talked about the fact that he asked the warden to file a motion, and the warden refused to do so. So, I mean, the court covered just about everything, and I don't understand why you would say that in this fairly lengthy opinion, sentencing opinion, that the words don't mean what they say. Your Honor, because the 924 simply saying that, it acknowledges that there was a 924C stack in this case. But you have to go against the background that Congress said, no sentence can be changed unless we authorize it under certain specified circumstances. So, even though their sentencing level may have been different then than it is now, we don't change sentences unless, and then it sets a criteria. And that's what we hear under compassionate release. And the court went through the compassionate release. We have said that either prong, either you can find exceptional circumstances, or the three factors you can address. Either one justifies the court's discretion. And in this case, the court addressed both. I don't know what else the court should say. I mean, tell me what the court should say differently. The court should acknowledge, or at least address, whether or not this sentence was of an unusual length, and whether it constituted a gross disparity. That is the extraordinary and compelling circumstances. It did address that. It addressed it explicitly. Your Honor, it never even says the words. It doesn't use gross disparity. It acknowledges the substance. And I know, I'm sorry, I didn't mean to speak over. I mean, it's not, we're not talking magic words. And Your Honor, before I go forward, I'm about out of time. Can I finish, at least finish this point? Would that be okay? Yeah, please, sure, of course. Your Honor, we're not talking magic words. And I understand that. So it's not as simple as looking through this and saying, did you say the word gross disparity? Did you say the word sheer and unusual length? Did you say the words exceptional rehabilitation? I understand that. But what I am saying is, when you can read an opinion, and all you can come away with as to his analysis of these extraordinary and compelling circumstances is, he acknowledges that there's a difference in the 35-year 924 stack then and the 20-year 924 stack today. A mere acknowledgment of that is not addressing the argument. We have to know whether or not, in this court's view, that constituted a gross disparity. We need to know whether or not in this court, in the district. Where do you find gross disparity in the statute that the court had to consider? Well, I do think, you know, given at the time, I don't think that was there. But I do think McCoy makes that point. That's not a requirement. All you have to do is consider it. And the court recognized the fact that the sentence under the stacking sentences back then were larger than the stacking sentences currently in place. And the court says, but it's still justified because, and it went through then, several pages of discussion why. And so it seems to me that is what sentencing is about. Addressing all the issues and balancing them and coming to a conclusion. I don't understand what words we should disregard because it is just spoken by the court. Well, Your Honor, and I'm quite a bit over now, but if I could address that. Sure, please do. I'm not necessarily saying you need to disregard anything that the court said. Really what I'm saying is that the court, in its reasoning, didn't say enough. And I think, again, it goes back to weighing, well, it needed to weigh, for example, the exceptional rehabilitation. It expressly weighed. It addressed separately every one of your points. You made three points. It addressed every one of them and then said, but in this case, the three factors outweigh that and this is the reason why. And then it explained why. But, Your Honor, what more should it say? Even to the point you just made, you said he addressed them separately. I mean, one of our points is, again, they're supposed to be assessed together. So that is yet another error that we're kind of pointing to here is you have to give some sort of real analysis of the arguments that are being raised here. Simply just listing them and saying them back to the parties is not giving a true analysis of that. I understand the court's point that he did address it. Actually, this is a fairly lengthy sentencing memorandum. It's thorough. It addressed everything that the court had before it. It said everything on the court's mind. I'm just not sure that we should be telling the court that should say something else. The court said why it exercised its discretion the way it did. We may not agree with it. I mean, if I were the district judge, and I was one for a short time, I might reduce it to 365. I think that's what you would want is the 240 plus 125, right? That's right. Right. I might have done that, but that's a discretionary decision. This court explained why it did it, and it was moved by the enormous victim damage. In this case, that's everlasting, and the fact that the sentence was an appropriate sentence recognizes rehabilitation. The issue in this case, and you didn't raise this, but the issue in this case is not whether the court expressed himself. You raised three issues about disparity, age, and the rehabilitation, and every one of those three was addressed fully. So now the question is all you can do is disagree, and I know you do disagree with the court's statements on those three points, but was that an abuse of discretion if the court looked at it that way? I think the abuse of discretion comes where, again, and I've noted several places where I see it, but I think even in talking about the 3553A factors, in my view the abuse of discretion comes in the reliance on just that single factor and the failure to weigh any of the other things. The court recited three or four factors. But not in the context of how they affected 3553A. Yes, it did. For example, the court doesn't say. It talked about protecting the public deterrence and all the whatever it said there on the factors. It did, but those almost all go to punishment. I mean there's no discussion of, for example, the unwarranted disparity. I don't know how any, if I could put it this way, if this were to go back and we were at a sentencing and I was arguing to that judge at a sentencing hearing and I said, Your Honor, this is an unwarranted disparity. A person today would get a guideline of 30 years and five months. Well, of course, unwarranted disparity doesn't compare past people with future people. It compares sentences imposed at the time the sentence was imposed. That's fair. But if I were to say this 45-and-a-half-year sentence is an unwarranted disparity with similarly situated defendants today, which it unquestionably would be, that goes back to what I was saying before, which is that the district court would then have to give a reason for why a variance of upwards of 15 years is sufficient in this case, simply restating the conduct for which, again, this same conduct, these same facts, a defendant is subject to. It recited the conduct, but it also recited the effect of that conduct on society and the lasting impact and its permanence. I mean, those are factors that go beyond just the conduct. Those are also . . . The question is what is the appropriate sentence on the motion for a compassionate release, and the court reassessed the entire sentence, both the reasons you gave on the one prong, the extraordinary and compelling circumstances, and the second prong, the 3553A factors. And it did both. It didn't have to do both. We've approved sentencings where just the 3553 factors have been proved or where the court simply said there was no extraordinary and compelling circumstances. But here the court did both and then explained why it was doing what it was doing. Now, I think you can legitimately disagree because of the things you're saying, and your arguments are persuasive. But we're talking about an abuse of discretion. It's sort of . . . You basically have to say the judge went off the deep end somehow. I think . . . I'll give you 30 seconds to wind up. Because I've gone over here. I think the judge went off the deep end when he did not seem to consider the holding, the reasoning, the analysis in McCoy at all. Okay. And that was all that he had at that time. Thank you very much. We'll come down and greet counsel, and then proceed on to the next case.
judges: Paul V. Niemeyer, Roger L. Gregory, A. Marvin Quattlebaum Jr.